01

02

03

04

05

06                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
07                              AT SEATTLE

08  DANIELLE M. GIZAS,                    )
                                          )    CASE NO. C12-0893-RSM-MAT
09          Plaintiff,                    )
                                          )
10      v.                                )    REPORT AND RECOMMENDATION
                                          )    RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,                    )    DISABILITY APPEAL
    Commissioner of Social Security,      )
12                                        )
            Defendant.                    )
13  _____ )

14          Plaintiff Danielle M. Gizas proceeds through counsel in her appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).    The

16  Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a

17  hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision,

18  the administrative record (AR), and all memoranda of record, the Court recommends that this

19  matter be REVERSED and REMANDED for further administrative proceedings.

20  //

21  //

22  //

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 **FACTS AND PROCEDURAL HISTORY**

02    Plaintiff was born on XXXX, 1993.[1]   At the time of the administrative hearing,

03 Plaintiff was enrolled in eleventh grade via online classes.  (AR 36-38.)

04    On April 3, 2008, Plaintiff's mother filed an application for SSI benefits on Plaintiff's

05 behalf.  (*See* AR 135-43.)  Those applications were denied initially and on reconsideration,

06 and Plaintiff timely requested a hearing. (AR 78-80, 87-96.)

07    On July 28, 2010, ALJ Verrell Dethloff held a hearing, taking testimony from

08 Plaintiff, Plaintiff's mother, and a medical expert.  (AR 33-68.)  On December 1, 2010, the

09 ALJ issued a decision finding Plaintiff not disabled.  (AR 14-28.)  Plaintiff timely appealed.

10 The Appeals Council denied Plaintiff's request for review on March 22, 2012 (AR 1-6),

11 making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this

12 final decision of the Commissioner to this Court.

13 **JURISDICTION**

14    The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

15 405(g).

16 **DISCUSSION**

17    The social security regulations set forth a three-step sequential evaluation process for

18 determining whether a child is disabled.  20 C.F.R. § 416.924.  At step one, it must be

19

20

21    [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   determined whether the claimant is performing substantial gainful activity.[2]  *Id.*  The ALJ

02   found that Plaintiff had not engaged in substantial gainful activity since March 18, 2008, her

03   benefits application date.  (AR 17.)

04        If the claimant is not performing substantial gainful activity, at step two, it must be

05   determined whether the claimant has a "severe" medically determinable impairment or

06   combination thereof.  *Id.*  The ALJ found that Plaintiff had two severe impairments: a mood

07   disorder and oppositional defiant disorder (ODD).  (AR 17.)

08        If the claimant has a severe impairment or combination of impairments that meets the

09   duration requirement, it must be determined at step three whether that impairment meets,

10   medically equals, or functionally equals a listed impairment in 20 C.F.R. § 404, Part B,

11   Appendix 1, Subpart P.  *Id.*  If the child's impairment meets or medically equals a listed

12   impairment, then the claimant will be found disabled.  If the impairment does not meet or

13   medically equal a listed impairment, it must be determined whether the impairment

14   *functionally* equals a listed impairment by assessing the child's limitations in six broad areas

15   of functioning called "domains."  The domains include the following: (1) acquiring and using

16   information, (2) attending and completing tasks, (3) interacting and relating with others, (4)

17   moving about and manipulating objects, (5) caring for oneself, (6) health and physical well-

18   being.  20 C.F.R. § 416.926a.  The claimant's impairment will be considered functionally

19   equivalent if the claimant has "marked" limitations in two domains, or "extreme" limitations

20   in one domain.  *Id.*  A determination of functional equivalence is the responsibility of the state

21

22        [2]  School attendance is not considered substantial gainful activity.  20 C.F.R. § 416.972.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  agency medical or psychological staff at the initial and reconsideration levels, of an ALJ at

02  the hearing level, and of the Appeals Council at that level.  20 C.F.R. § 416.926a(n).

03      If a claimant survives all three steps and has an impairment that meets, medically

04  equals, or functionally equals a listed impairment for the required duration, he or she will be

05  found disabled for purposes of SSI.  Here, the ALJ found that Plaintiff did not have an

06  impairment or combination of impairments that met or medically equaled a listed impairment,

07  and also found that Plaintiff's impairments (individually or in combination) were not

08  functionally equal to a listed impairment.  (AR at 17-27.)

09      This Court's review of the ALJ's decision is limited to whether the decision is in

10  accordance with the law and the findings supported by substantial evidence in the record as a

11  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

12  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

14  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

15  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

16  F.3d 947, 954 (9th Cir. 2002).

17      Plaintiff argues the ALJ erred by (1) finding Plaintiff's limitation in attending and

18  completing tasks to be less than marked and attributable to volitional conduct rather than a

19  medical impairment; and (2) failing to consider whether Plaintiff's impairments met or

20  medically equaled a listed impairment under the child's listings (rather than the adult listings).

21  The Commissioner argues that the ALJ's decision should be affirmed because it is supported

22  by substantial evidence and free from legal error.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01                                    <u>Functional Equivalence</u>

02          The ALJ found that Plaintiff was markedly limited in only one of the six domains:

03  interacting and relating with others.  (AR 25.)  Plaintiff argues that the ALJ should have also

04  found her to be markedly limited in the domain of attending and completing tasks, as she

05  contends medical expert found.

06          At the administrative hearing, the medical expert testified that he believed Plaintiff

07  had a marked limitation in her ability to attend and complete tasks "when she was asked to

08  follow through, follow through with school" (AR 62), but also testified that he believed her

09  limitations in this domain were "less than marked."  (AR 59.)  The ALJ sought clarification of

10  this equivocal testimony as to this domain later in the hearing:

11          [ALJ]: I'm a little confused about your rating of the claimant on attending and
            completing tasks.
12
            [Medical expert]: Again, and it's difficult, Your Honor, because if it is a task
13          that she wants to do and likes she will complete it but if she doesn't want to do
            it and there's a certain kind of an issue here — It's hard to say if it is conscious
14          or unconscious at this point.  That's how I rated it.  That's one of the issues I
            was trying to deal with.  Sorry to split hairs.
15
            [ALJ]: That's all right.   So, we don't really know if it is subconscious or
16          merely motivational?

17          [Medical expert]: We don't.  That's one of the problems.  She certainly has had
            severe behavioral problems.   There's no question about that.   Her recent
18          treatment has been successful, at least on paper, they say it's been successful
            because they did this intervention with this Ayers Company.  But I don't get
19          any sense of her moving beyond this kind of vegetative life that she's leading
            right now and I think if she continues this life — There's no major therapeutic
20          breakthrough that I can see.

21          [ALJ]: It's sort of like she's retired.

22          [Medical expert]: Yes.  And it would be hard to imagine a 17-year-old young

01   woman with normal intelligence, not being to at least function better.  And
02   Counsel made a good point, that her school record is abysmal and her
     performance, she's really been difficult at school.  She's used a lot of profanity
03   [and] so she may indeed have a bi-polar I but so far there hasn't been any real
     good — It's a rare disease and it's a difficult disease to evaluate in young
04   people and even more difficult to treat.  So, she may have some kind of low
     grade bi-polar disorder which has not been successfully treated.  The substance
05   abuse could be comorbid with it.  But at her current state I don't see very much
     progress forward or backward.  I don't see any resolution of her conflict.
06   Unless there is some further evaluation, perhaps evaluation by somebody who
     is very experienced in affective disorders in adolescents.  I've seen about
07   twelve through my lifetime and treated them and it's been difficult.  They are
     really hard people to treat.

08   [ALJ]: Thank you.

09   [Plaintiff's attorney]: Doctor, you'd mention she does what she wants to do but
     doesn't do what she doesn't want to do.  Is that a symptom of oppositional
10   defiant disorder?

11   [Medical expert]: Well, you know I have my concerns about oppositional
     defiant disorder but it could be certainly behavioral — It could be as they
12   define it, yes.

13   [Plaintiff's attorney]: In the DSM4?

14   [Medical expert]: Yes.

15   (AR at 65-67.)  In his written decision, the ALJ described the medical expert's testimony as

16   "somewhat equivocal" but suggesting that Plaintiff had "less than marked limitations in

17   attending and completing tasks."  (AR 21.)  The ALJ found that the evidence "suggests that

18   [Plaintiff] is able to attend and complete tasks when she chooses to do so."  (AR 20.)  To

19   support that finding, he cited (1) Plaintiff's refusal to participate in counseling that was

20   strongly encouraged; (2) her discontinuation of her ADHD medication due to side effects; (3)

21   her subsequent diagnosis with bipolar disorder; (4) her failure to display hyperactivity or

22   excessive fidgeting, her logical and organized thoughts, and her lack of impulsivity or

01  distractibility during a July 2008 psychological exam, after which the examiner diagnosed

02  Plaintiff with bipolar disorder (not ADHD) and ODD and found that her concentration,

03  persistence and pace were not markedly atypical.  (AR 20.)  Elsewhere in the decision, the

04  ALJ cited Plaintiff's ninth-grade math teacher's evaluation and concluded that Plaintiff's

05  "academic failure is within her own control."  (AR 24.)

06      Plaintiff assigns error to the ALJ's minimization of Plaintiff's difficulties with

07  attending and completing tasks as simply "volitional behavior."  Plaintiff notes that symptoms

08  of ODD include "'actively defying or refusing to comply with the requests or rules of adults'"

09  and "'resistance to directions.'"  *See* Dkt. 14 at 7 (quoting Diagnostic and Statistical Manual

10  of Mental Disorders 318.81 (4th ed. 2000)).  Thus, according to Plaintiff, it is unclear on what

11  basis the ALJ concluded that Plaintiff's failure to complete school assignments was "within

12  her own control," given that he acknowledged that her ODD was a severe impairment.

13      The Court agrees that the ALJ failed to cite evidence that supports an inference that

14  Plaintiff's failure to complete school assignments is "within her control."  Plaintiff's refusal to

15  take medication and participate in counseling do not demonstrate that she volitionally controls

16  her behavior, and her bipolar diagnosis is not inconsistent with difficulties attending and

17  completing tasks.  The July 2008 psychological evaluation also fails to support the ALJ's

18  conclusion.  Nancy Heilman, Ph.D., diagnosed Plaintiff with ODD and found some "ADHD

19  symptomatology present," which she believed was attributable to Plaintiff's bipolar disorder

20  rather than ADHD itself.  (AR 287.)  Dr. Heilman recommended that Plaintiff continue

21  bipolar treatment and start therapy or counseling.  (AR 288.)  Ultimately, Dr. Heilman

22  believed Plaintiff would require "increase[d] supervision and special services for the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01   foreseeable future."  (AR 288.) Dr. Heilman's evaluation does not include an opinion that

02   Plaintiff's impairments are not the cause of her failure to complete schoolwork, and thus does

03   not support the ALJ's conclusion that Plaintiff's "academic failure is within her own control."

04          Though the ALJ accurately noted that Plaintiff's ninth-grade math teacher indicated

05   that she had no limitation as to focusing long enough to finish a task, refocusing to task,

06   carrying out instructions, or organizing school materials, the ALJ failed to acknowledge that

07   the teacher also noted on the same page that Plaintiff had a "serious problem" completing

08   class assignments and an "obvious problem" completing work accurately without careless

09   mistakes, working without distracting herself or others, and completing assignments on time.

10   (AR 166.)  The teacher's evaluation as a whole does not support the ALJ's conclusion.

11          Furthermore, Plaintiff's more recent school evaluations confirm that she continued to

12   have difficulties attending and completing tasks.  In tenth grade, Plaintiff's study skills

13   teacher found more severe limitations than her ninth-grade math teacher found: she was found

14   to have serious problems completing assignments, changing activities without disruption,

15   focusing long enough to finish assignments, refocusing to task when necessary, and carrying

16   out multistep instructions, and obvious problems working at a reasonable pace/finishing on

17   time, working without distracting others, completing work accurately without careless

18   mistakes.  (AR 225.)

19          In eleventh grade, Plaintiff continued to have trouble at school.  Her teachers noted

20   that she

21          completes very little work in her classes and failed all of her classes last school
            year.  She often refuses work and chooses to read or listen to music instead.  In
22          observations completed both at school and off-campus during tutoring it has

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01        been noted that Danielle has difficulties following rules, often engages in preferred activities rather than assigned tasks, and lacks appropriate social and
02        behavioral skills to deal with conflict and frustration. . . .

03                Based on observations, interviews, behavioral assessments, and a review of her disciplinary records it appears that Danielle does not possess the necessary self-regulation skills to be successful. As a result she will need
04        specially designed instruction to explicitly teach her conflict resolution skills, and to increase her compliance to adult requests. In addition, she will need
05        significant accommodations and modifications to her educational environment. . . .

06

07  (AR 370.) Plaintiff also submitted more recent evidence to the Appeals Council, showing that

08  Plaintiff's one-on-one home tutoring program had not been successful because Plaintiff

09  refused to participate more than sporadically because she disliked her tutor. (AR 254.)

10  Plaintiff instead switched to a one-on-one drop-in program, but only attended three out of five

11  days per week on average. (AR 254.) Teachers "continue to note that [Plaintiff] engages in

12  disrespectful and oppositional behavior." (AR 270.)

13        In light of all of this evidence of record, the ALJ's findings regarding Plaintiff's

14  abilities to attend and complete tasks are inadequate, because the reasoning provided fails to

15  account for most of the evidence and the reasons provided for rating her limitations as "less

16  than marked" do not actually support the ALJ's conclusion that she has the ability to attend

17  and complete tasks when she chooses to do so. Instead, the evidence shows that Plaintiff

18  consistently refuses to complete assigned schoolwork, requires consistent prompting to stay

19  on task, cannot manage her time to complete tasks within the time allotted, and is easily

20  frustrated, which is consistent with her ODD diagnosis. *See, e.g.*, AR 254. Her teachers

21  affirmed that Plaintiff's multiple mental health diagnoses "adversely impact her educational

22  success by limiting her alertness and focus, impacting her ability to attend school, and by

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 causing social and behavioral differences." (AR 275.) Though the ALJ apparently believes

02 that her conduct is volitional, he did not cite any evidence to support this belief. Further, even

03 if Plaintiff can complete self-selected tasks, as the ALJ believes, the "attending and

04 completing tasks" domain for adolescents focuses on assigned tasks in a school setting, not

05 self-selected tasks. *See, e.g.* 20 C.F.R. § 416.926a(h)(2)-(3).

06        Accordingly, on remand the ALJ shall reconsider the severity of Plaintiff's limitation

07 in the domain of attending and completing tasks as defined by the regulations, in light of all

08 the evidence of record. If necessary, the ALJ shall obtain additional medical expert

09 testimony.

10 Childhood Listings

11        The ALJ's decision relies upon the medical expert's testimony that Plaintiff's

12 impairments do not meet or medically equal any of the listed impairments for children. (AR

13 17.) According to Plaintiff, the medical expert presented inconsistent testimony regarding the

14 childhood listings, but various aspects of his testimony suggest that Plaintiff did meet a

15 childhood listing.

16        Reviewing the transcript of the administrative hearing sheds some light on this

17 dispute. The medical expert never directly testified as to whether Plaintiff met a childhood

18 listing, though some of his testimony suggests that she did:

19     [ALJ]: How would you rate her on the form we have? . . . We have a
specialized form for people under 18.

20

21     [Medical expert]: . . . Let me go through the first one. Acquiring and using
information, she has no limitation with that. She has less than marked
problems with attending and completing a task. Interacting with others, I think

22 at times can be marked and that's been proven, I think the interaction is

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01   basically with her mother. . . . [B]asically, I was trying to evaluate her under
the adult evaluation since they were alleging bi-polar disorder and that was the
02   one I was sort of fitting her in to.  She doesn't really fit that very well.  She's
probably, as far as the child, the only thing that really comes up is the difficulty
03   in not completing tasks when she is asked to do this and interacting with
others.  So, she might meet the child.  But it's a little bit hard to say under
04   certain circumstances right now when she's getting pretty much what she
wants to do, she does all right and the only person she is conflicting with is her
05   mother.  She pretty much does what she wants to do otherwise.

06   . . .

07   [Plaintiff's attorney]: Doctor, are you familiar with the childhood criteria for
evaluating disability?
08
[Medical expert]: Yes.
09
[Plaintiff's attorney]: Okay.  And so you do realize the bi-polar disorder can be
10   evaluated under the child standard, as well.  Is that correct?

11   [Medical expert]: Yes, it could be, yes.

12   [Plaintiff's attorney]: Okay.  You didn't mention a diagnosis that comes up
multiple times which is oppositional defiant disorder.
13
[Medical expert]: Yeah.  That's a popular diagnosis.
14
[Plaintiff's attorney]: Okay.  When you say it's a popular diagnosis –
15
[Medical expert]: It's a diagnosis that is done sort of as – from a scientific
16   background for it, but it is an issue that's quoted in children that would have
probably personality disorders, yes.
17
[Plaintiff's attorney]: Okay.  And it's also listed in the DSM4.
18
[Medical expert]: Yes.
19
[Plaintiff's attorney]: It's generally recognized as a real and valid diagnosis?
20
[Medical expert]: Yes.
21
[Plaintiff's attorney]: Okay.  And do you see evidence that [Plaintiff] has this?
22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01        [Medical expert]: They've diagnosed her with an ODD, Oppositional diagnosis.

02        [Plaintiff's attorney]: Okay.

03

04        [Medical expert]: I think the issue is – And that's probably a fair diagnosis. The child listing that I said – My take on her would be that she would meet part of the child listings.

05

06        [Plaintiff's attorney]: Okay.  When you say she would meet part of the child listings, you're saying that she has a marked limitation in interacting and relating with others?

07

08        [Medical expert]: Right.

09        [Plaintiff's attorney]: And a marked limitation in what other domain, attending and completing?

10        [Medical expert]: The other domain I believe was her ability to attending and completing tasks when she was asked to follow through, follow through with school, and that was marked.

11

12        [Plaintiff's attorney]: I want to ask you some more questions about that.  Did you review the teacher questionnaire at 5E2?

13

14        [Medical expert]: Yeah.  I did.

15        [Plaintiff's attorney]: Okay.  And so, is that part of the basis of your finding that she has a marked difficulty in attending and completing tasks?

16        [Medical expert]: Yes.

17  (AR 60-63.)  Neither this testimony nor any other portion of the hearing transcript contains

18  the discussion of childhood listings the ALJ describes in the written decision.

19        Nonetheless, Plaintiff has not presented any evidence showing that her impairments

20  were in fact medically equivalent to a childhood listing.  *See* 20 C.F.R. Part 404, Subpart P,

21  Appendix 1, 112.02B.2 (setting forth the criteria for the childhood listings for mood disorders

22  and personality disorders).  Though Plaintiff faults the ALJ for focusing on functional

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  equivalence rather than medical equivalence (Dkt. 14 at 19), Plaintiff's evidence displays the

02  same focus.   For example, Plaintiff's briefing does not identify which of the Part B

03  requirements of Listing 112.02(B)(2) she meets or equals, but simply contends that "the

04  evidence" supports a finding that she met or equaled those requirements.  *See* Dkt. 14 at 19-

05  20.  Accordingly, because Plaintiff has not shown that the ALJ erred in finding that she did

06  not medically equal a childhood listing, Plaintiff's argument fails on this point.

07                                    **<u>CONCLUSION</u>**

08          For the reasons set forth above, this matter should be REVERSED and REMANDED

09  for further administrative proceedings.

10          DATED this <u>10th</u> day of January, 2013.

11

12                                                  _____

13                                                  Mary Alice Theiler
                                                    United States Magistrate Judge

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13